48   597.
86   233

GEORGE D. McKAY ET AL v. EDWARD S. EVANS ET AL.

*Contract for delivery—Evidence—Vendor's representations—Time—Construction of terms—Quality of material—Exceptions.*

A contract was made for the delivery of timber, but after the time had expired the parties disagreed, and *assumpsit* was brought for what had been delivered. Plaintiffs claimed that delivery had been postponed by mutual assent for the convenience of defendants. *Held* proper to allow them to give evidence of other operations of defendants which would be accommodated by such postponements.

In an action for the value of timber delivered under a contract there was no error in excluding testimony that before the contract was made, one of the plaintiffs had represented the timber as of specified dimensions, where there was nothing to show that the representation was made to any one interested.

Where suit is brought for the value of goods delivered under a contract, a charge which ignores the plaintiff's showing that he had fully performed his obligations, except in certain respects assented to by defendants, and which assumes that he had not made a full performance, is misleading and erroneous.

Where plaintiffs suing for the value of goods delivered under a contract show that delivery was made after the stipulated time by defendants' desire, for defendants' accommodation, a charge is wrong which requires plaintiffs to prove that they had given a separate consideration for the extension of time.

A contract for the sale of "timber now lying in Van Etten lake," gave "the privilege of increasing the amount," and provided that "*all timber hereafter cut* is to scale 12 inches and upwards." *Held* that this final clause did not cover the timber in the lake.

In an action for the value of a quantity of timber sold under a contract, there was no error in requiring the jury to ascertain whether it was of the quality specified in the contract, *as understood by the parties.* Their understanding was material.

Error cannot be based on an exception so indefinite as not to identify any specific proposition, or point out any distinct instruction.

Error to Iosco.   Submitted June 14.   Decided June 21.

ASSUMPSIT.   Defendants bring error.   Affirmed

*R. Z. Roberts* for appellants.

*Wm. H. Simpson* and *Hatch & Cooley* for appellees.

GRAVES, C. J. On the twelfth of January, 1880, the parties made a written agreement in these terms :

"Articles of agreement, made in duplicate, this 12th day of January, A.D. 1880, between McKay Brothers, of Oscoda, Michigan, of the first part, and E. Evans & Sons, of Tonawanda, New York, of the second part, witnesseth : That the said parties of the first part, in consideration of the sum of six and 25-100 dollars per thousand feet, B. M., to be computed by Doyle's rule, hath granted, bargained and sold to the said parties of the second part six hundred and fifty thousand feet, B. M., of good, sound and merchantable Norway and white pine timber, said timber now lying in Van Etten lake, and marked ' O. & C.', and with the privilege of increasing the amount of timber to fifteen hundred thousand feet or less, and all timber hereafter cut is to scale twelve inches and upwards in the centre, and will cut thirty feet and upwards in length, to the full length of the merchantable body of the tree, and the price to be paid for the amount over and above the six hundred and fifty thousand feet shall be six and 25-100 dollars per thousand feet, and to consist of good, sound and merchantable Norway pine timber ; said timber to be rafted in proper condition for towing over the lakes, and delivered to the said parties of the second part, to their tug-boat, or to piles furnished by said McKay Bros., on or before the 15th day of June, 1880. Said parties of the second part are to furnish rafting chains at Oscoda docks, sufficient to raft said timber, on or before the first day of June, 1880. Said timber to be peeled in centre, and measured inside of rafting-holes, and inspected by a competent scaler, to be selected agreeable to both parties, the parties each bearing one-half of the expense of such measuring and inspection. In consideration of the delivery of said timber as aforesaid, the said parties of the second part hereby agree to pay the said parties of the first part the sum of two thousand dollars at the signing of these presents, and the further sum of one thousand dollars on delivery of said timber as aforesaid, and a proportionate amount as said quantity may be increased, up to fifteen hundred thousand feet, or less, and the balance in equal instalments in four months from the delivery of said timber.

In witness whereof, the said parties have hereunto subscribed their names the day and year first above written.

McKAY BROS.

E. EVANS & SONS."

After large transactions had occurred on the footing of the contract the parties disagreed. The plaintiffs did not make delivery in time or manner as specified in this written contract; but they claimed that the departure from the written terms was by the mutual assent of the parties and in order to accommodate the defendants. They also claimed that they had complied in all other respects and that the defendants were in default. On the other hand the defendants denied that they had assented to any departure from the original contract, and denied that the plaintiffs had furnished the quantity or quality of timber called for and insisted that they had broken the contract in various ways to defendant's damage. The plaintiffs brought this action of general *assumpsit* to recover for the timber, and the trial resulted in a verdict in their favor for $907 and the defendants allege error.

The plaintiffs sought to show that delivery was postponed until some time in July for the convenience of the defendants and that the plaintiffs were excused from rafting the timber for towing down the lake, and to strengthen this showing of a change in regard to delivery the plaintiffs were allowed to give evidence of other lumbering operations of defendants which would be accommodated by it, and which in consequence might be carried on in common and with great advantage to defendants. These facts could not injure the defendants and they had some tendency to show the likelihood of such an arrangement and to furnish some grounds of inference in its favor.

The eighth assignment of error* is not in harmony with

---

*The assignments of error referred to in the opinion were as follows:

(8) The said circuit judge erred in excluding the testimony of Edward Evans. one of the defendants below, tending to show that timber of less than twelve inches in diameter in the centre, is not considered merchantable; that it is of much less value, and that plaintiffs below represented the timber in Van Etten lake as being above that diameter, that in fact about one-third of the timber was under size.

the record.  It assumes inaccurately that a particular piece
of evidence was excluded.  The ruling only applied to an
offer of proof that prior to the agreement one of the plaint-
iffs represented that all the timber in Van Etten lake was
above twelve inches in diameter in the centre.  The offer
did not disclose to whom the representation was made, and
hence it did not purport to implicate any one having any
connection with the controversy.  If the fact proposed were
admitted, it would be meaningless.  It is needless to allude
to other reasons for the ruling.

The eleventh charge of error complains of the refusal
of the court to give the three requests preferred by the
defendant.†

---

(11)  The said circuit judge erred in severally refusing to charge the jury
as requested in defendants' first, second, and third written requests.

(12)  The said circuit judge erred in leaving to the jury, as a question
of fact, as to what constituted good, merchantable timber.

(13)  The circuit judge erred in charging the jury in reference to the
delivery, in which he says in substance that a delivery either to the tug
or at the piles would be a delivery, and the risk of the McKay Brothers
would cease.

(14)  The said circuit judge erred in his instructions to the jury in ref-
erence to the Duggan scale at Van Etten lake.

† The requests were as follows:

(1)  Plaintiffs having brought their action under the common counts,
and having introduced a written contract between the parties as the
basis of their action, and the testimony in the case having failed to show
that plaintiffs fully performed this contract on their part, and that the
only duty yet resting on the defendants under it was to pay the contract
price, I charge you that the plaintiffs are only entitled to recover the
actual benefit derived by the defendants from the merchantable timber
had by them from the plaintiffs, not, however, exceeding the contract
price of $6.25 per thousand feet, board measure, for the actual amount
of merchantable timber received.  And, in determining the benefit you
may take into consideration the testimony of defendant Evans, together
with any other evidentiary facts bearing upon that point, and your deter-
mination should not be governed by the value at Van Etten lake, or else-
where, away from the place of delivery, as fixed in the contract; but the
actual benefit derived by the defendants; and this, I suppose, would be
its real cash value to them in the condition in which it was actually
received by them at the place of delivery named in the contract.

(2)  The original contract having been in writing and signed by the
parties, and plaintiffs now seeking to recover, basing their claim, in
whole or in part, upon an alleged verbal modification of their contract,
I charge you that the burden of proof, as to the alleged modification,
rests upon the plaintiffs, and they must establish this branch of their
case by a preponderance of testimony; and you should, in passing upon
this, consider what, if any, consideration moved from plaintiffs to
defendants to recompense the latter for accepting something less than

The first of these requests ignored the claim and *showing* made by the plaintiffs that they had fully executed the contract on their part, save only with such deviations as were for defendants' benefit, and which they assented to and ratified by conduct. It was therefore inapplicable and misleading.

The second request was improper for one and perhaps other reasons. It went upon the theory that the plaintiffs were bound by the original terms respecting delivery, unless their proof was complete to show that they had furnished some specific consideration for the deviations. This was requiring too much, and was not in harmony with the case. The claim made by the plaintiffs was that the change concerning delivery was at the desire of the defendants and for their benefit, and was mutually assented to and mutually acted on and approved; and if such was the case it was not necessary to show any separate consideration.

---

plaintiffs had, by their written agreement, undertaken to perform; and if you are satisfied that plaintiffs' testimony in reference to this point is improbable or untrue, or that it does not outweigh the defendants' testimony, then the plaintiffs must fail upon that point; and I think that you should be as well satisfied that a modification *was* made—that the minds of the contracting parties met upon common ground, and that both understood it alike—as you are that the writen contract was made, before you are entitled to overthrow the written contract in any of its provisions, and substitute in its stead the alleged modifications.

(3) The written contract in this case is an entirety. The six hundred and fifty thousand feet were to be good, sound, merchantable Norway and white pine timber, with the privilege of increasing the amount of timber to fifteen hundred thousand feet, more or less, and all timber hereafter cut is to scale twelve inches and upwards in the center, and will cut thirty feet and upwards in length, etc. These provisions applied as much to the timber already in the lake as that to be thereafter cut, and if the plaintiffs had elected to put in eight hundred and fifty thousand feet more of timber, it would still be an entire contract, not severable. And if you are satisfied that some portion of the timber delivered by plaintiffs to defendants was not merchantable timber,—not up to the merchantable size,—then as to so much of this timber as thus fell short of being merchantable, plaintiffs could, under no theory in this case, recover as to so much of this timber as was under size, and not merchantable, the contract price, but recover for it only so much as it was worth, and the evidence as to the value of this small timber is confined to the statement of defendant Evans, who makes it four dollars per thousand feet, delivered to a tug, or perhaps four dollars and a half per thousand feet. In computing what, if anything, plaintiffs should receive for their timber, you should compute the value only, not, however, exceeding the contract price.

The third request contained several propositions of which the leading one was that the provision in the contract particularly specifying size was applicable to all the logs which were agreed for. I do not so understand the contract. The 650 M. feet were already on hand and lying in Van Etten lake and it was considered sufficient to require that they should be "good, sound and merchantable." But a special provision was deemed requisite for the excess which the plaintiffs were given an option to furnish. These logs were not on hand, and could not be seen. They were yet to be cut. The parties were disposed to be more definite in fixing their dimensions, and hence they said that "all timber *hereafter* cut is to scale 12 inches and upwards in the centre, and will cut 30 feet and upwards in length of the mercantile body of the tree." This provision was expressly inappropriate to the timber already in the lake and was only suited to the case of timber to be subsequently cut.

The jury were told to ascertain whether the timber sold was good, sound, merchantable Norway and white pine timber as the parties understood it, and this is complained of by the twelfth assignment of error. The objection is that it was immaterial how the parties understood it. Whether the qualifying words were necessary is not important. The exception cannot be maintained on the reason given for it. The understanding of the parties was material. The charge was not dealing with the construction of the contract, but with the question whether as matter of fact the logs complied with it; and it required the jury to see whether the parties regarded them as complying with it. If the parties practically decided that the timber conformed to the contract it would not be easy to get round their decision in the absence of fraud.

The thirteenth allegation of error objects to the instruction where the jury are told that a delivery by the plaintiffs to the defendants' tug-boat or the piles, would place the timber at defendants' risk. The criticism on this is unwarranted. In this part of his charge the judge was not dealing with the mode of delivery or with the manner in which

the logs were to be brought or put together or held together. These matters were elsewhere disposed of so far as there seemed to be any necessity, and a repetition here or an extended explanation would have led to great prolixity and most likely to some obscurity. The judge was advising the jury at what stage the plaintiffs' care of the timber was to cease and that of the defendants begin, and the view taken was correct. The jury could not have been misled. They could not have believed that this instruction meant that in case the plaintiffs got the logs to the tug or piles in whatever manner it was sufficient.

The exception on which the fourteenth charge of error rests is too indefinite. It refers to part of the charge, but identifies no specific proposition nor points out any distinct instruction. Its scope can not be gathered from the terms.

This disposes of all the objections which are insisted on, and the result is that no error is shown.

The judgment must be affirmed with costs.

The other Justices concurred.